UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TANDY L. HAIRSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:05CV00076 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Tandy Hairston's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] and Motion for Evidentiary Hearing [doc. #24]. The Government has filed its Response to the Petition, and Petitioner has filed his Traverse.[1]

## I.     BACKGROUND FACTS

On January 29, 2004, a grand jury returned a seventeen-count Indictment charging Petitioner Tandy L. Hairston ("Petitioner") and seven other defendants with wire fraud, mail fraud, conspiracy to commit wire and mail fraud, money laundering, and conspiracy to launder money. Petitioner was named in all seventeen counts. The charges were based on the fraudulent conduct of Petitioner and his employees which took place at The Loan Store/Mid-Town Mortgage, a business which purported

_____

[1]On September 8, 2005, Petitioner requested that he be permitted to supplement his Petition [doc. #18]. His request was granted on September 14, 2005. The Government subsequently responded to Petitioner's Supplement, and Petitioner filed a Traverse in support of his Supplement. The Court will consider both the original briefing and the supplementary briefing. The Supplement does not contain any additional grounds for relief. Instead, it merely expands upon an argument already presented in the original Petition.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to broker home mortgages and refinancings.

On March 22, 2004, Petitioner signed a written Plea Agreement, Guidelines, Recommendations and Stipulations ("Plea Agreement") in which he agreed to plead guilty to Counts One, Five, Ten, Eleven, and Fourteen in exchange for the Government's agreement to move for the dismissal of the remaining counts against him. At the conclusion of his change of plea hearing on that date, Petitioner entered a plea of guilty as to Counts One, Five, Ten, Eleven, and Fourteen. On July 8, 2004, Petitioner was sentenced to concurrent terms of sixty-four months on each of the five counts to which he pled guilty. Petitioner was represented by a series of attorneys throughout the investigation, indictment, plea, and sentencing.[2] In his current Petition, Petitioner brings four grounds for relief, all of which are based upon the alleged ineffectiveness of three attorneys: William Wynne, who represented Petitioner through his change of plea, and Phillip Kavanaugh and Steve Williams, both of whom represented Petitioner from shortly after his change of plea through his sentencing.

## II.    STANDARDS FOR RELIEF

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the grounds that "the sentence was imposed in violation of the Constitution or laws

---

[2]Prior to being charged, Petitioner was represented, in chronological order, by Eric Tolen, Barry Short, and Burt Shostak. After he was indicted, Petitioner retained and discharged Justin Meehan. Brad Dede was appointed to represent Petitioner, but withdrew after a conflict arose. Next, Petitioner retained William Wynne, who represented Petitioner through his guilty plea. Mr. Wynne ultimately filed a motion to withdraw based upon certain behavior displayed by Petitioner at Mr. Wynne's office. Mr. Wynne's motion to withdraw was heard by the Court on May 6, 2004, at which time Mr. Wynne stated that he felt it necessary to take measures to ensure his personal safety in light of Petitioner's behavior. The Court granted Mr. Wynne's motion to withdraw and appointed the Federal Public Defender's Office for the Southern District of Illinois. Petitioner was ultimately represented by Federal Public Defender Phillip Kavanaugh and Assistant Federal Public Defender Steve Williams. Mr. Kavanaugh and Mr. Williams began representing Petitioner in May 2004 and continued their representation through the sentencing phase.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Court must hold an evidentiary hearing to consider claims in a § 2255 petition "'[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (quoting 28 U.S.C. § 2255). Thus, a "petitioner is entitled to an evidentiary hearing 'when the facts alleged, if true, would entitle [the petitioner] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043; *see also Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1998) (petition may be dismissed without a hearing if allegations, accepted as true, would not entitle petitioner to relief, or allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

A § 2255 petitioner's claims may be limited by procedural default. Claims that were raised and decided on direct appeal ordinarily cannot be relitigated in a § 2255 Petition.[3] *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Moreover, a petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Even constitutional or

---

[3]An exception to this general prohibition exists only where the alleged error constitutes a fundamental defect that inherently results in the complete miscarriage of justice. *United States v. Manko*, 772 F.2d 481, 482 (8th Cir. 1985); *see also Wiley*, 245 F.3d at 752 (exception recognized only when petitioner produces convincing new evidence of actual innocence).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

jurisdictional claims that could have been raised on direct appeal but were not are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997).

A § 2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. In *Strickland v. Washington*, the United States Supreme Court held that a showing of ineffective assistance of counsel requires a petitioner to demonstrate: (1) that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) that "counsel's deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). To prove ineffective assistance of counsel under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. When evaluating counsel's performance under this prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The challenged conduct must be evaluated in light of the circumstances surrounding the decision so as to fairly determine whether the conduct falls within the applicable wide range of reasonable assistance and sound trial strategy permitted by *Strickland*. *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir. 1996). Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced the case. *Strickland*, 466 U.S. at 697. To prevail on the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court may address the two *Strickland* prongs in any order, and, if the petitioner fails to make a sufficient

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

showing on one prong, the Court need not address the other prong. *See id.* at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) ("If we can answer 'no' to either question, then we need not address the other part of the test.").

## III.  DISCUSSION

A.  <u>Ground One: Ineffective Assistance of Counsel for Failing to Object to Length of Sentence</u>

In his first claim for relief, Petitioner states that Phillip Kavanaugh was ineffective for failing to object at the time of sentencing to the length of the sentence imposed.  According to Petitioner, the sixty-four month sentence imposed by the Court exceeds the statutory maximum by four months, and Mr. Kavanaugh was ineffective for failing to object to the sentence.

In this case, the Court imposed a sixty-four month sentence on each of the five counts to which Petitioner pled guilty and ordered that the sentences would run concurrently.[4]  The Government agrees that Petitioner is correct in his assertion that the statutory maximum sentence applicable to Petitioner's crimes is sixty months.  Therefore, Petitioner's sentence as to each count exceeds the statutory maximum by four months.  It appears that neither counsel for the Government, counsel for Petitioner, nor the Court recognized this error at the time of sentencing.  Under § 5G1.2 of the Sentencing Guidelines, Petitioner's sentencing range was sixty-three to seventy-eight months.  Thus, a sentence of sixty-four months was within the applicable Guidelines range.  However, the manner in which the sentence was imposed was incorrect.  Under the Guidelines, when sentencing a defendant on multiple counts of conviction, the sentence must be imposed in accordance with § 5G1.2 of the Sentencing Guidelines:

---

[4]This sentence resulted in a total prison term of sixty-four months.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

§ 5G1.2.  Sentencing on Multiple Counts of Conviction

(a) The sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment shall be determined by that statute and imposed independently.

(b) Except as otherwise required by law (*see* § 5G1.1(a), (b)), the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three, and Part C of this Chapter.

(c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences of all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. §5G1.2 (Nov. 2000).    Thus, unless limited by the applicable statutory maximum, the sentence for each count should constitute the total punishment.  U.S.S.G. § 5G1.2(b).  If the highest statutory maximum is less than the total punishment, as in this case, the sentence imposed should run consecutively to the extent necessary to produce a combined sentence equal to the total punishment.  U.S.S.G. § 5G1.2(d).  *See United States v. Evans*, 314 F.3d 329, 331 (8th Cir. 2002) (explaining correct method under § 5G1.2).  *See also United States v. Pierce*, 388 F.3d 1136, 1139 (8th Cir. 2004) (modifying district court's "clerical error" in improperly structuring the defendant's sentence; modifying judgment in accordance with § 5G1.2 and affirming as modified).

To prevail on his ineffective assistance of counsel claim, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Petitioner cannot demonstrate that he was prejudiced by counsel's failure to object to the manner in which his sentence was imposed.

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

At the time of sentencing, Petitioner was sentenced to a total of sixty-four months in prison. If his sentence had been correctly structured, he still would have received a total of sixty-four months in prison. Thus, counsel's alleged error had no impact on the length of Petitioner's incarceration and Petitioner was not prejudiced as a result of the error. Therefore, Petitioner's ineffective assistance of counsel claim fails. However, because Petitioner is correct in his assertion that his sentence was improperly structured, the Court will remedy this sentencing error by issuing an amended judgment, in accordance with U.S.S.G. § 5G1.2(d) (2000).[5]

   B.   Ground Two: Ineffective Assistance of Counsel for Erroneous Restitution Amounts

   In his second claim for relief, Petitioner states that William Wynne and Phillip Kavanaugh were ineffective both for advising him to agree to pay certain restitution sums for losses that were not the result of any conduct attributable to him and for failing to object to these restitution amounts. Essentially, Petitioner argues that portions of the restitution order are in error either because no loss actually occurred or because any loss was not attributable to his conduct.[6]

   Section 2255 cannot afford relief to a prisoner challenging the restitution portion of a sentence. *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003). According to § 2255,

> [a] prisoner in custody under sentence of a court established by Act of Congress *claiming the right to be released* upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

_____

[5]Defendant will be sentenced to 60 months on each of Counts 1, 5, 10, 11, and 14. Counts 1, 5, 10, and 11 will run concurrently. Fifty-six months of the sentence as to Count 14 will run concurrently, and four months of the sentence as to Count 14 will run consecutively.

[6]Petitioner points to various "examples" from the restitution order that demonstrate his counsels' alleged errors, including: (1) $100,000.00 to Vanessa Davidson; (2) $247,500.00 to Key Bank of Illinois; and (3) unspecified restitution to Equicredit, Alligent Bank, and Linda Davidson.

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

28 U.S.C. § 2255 (emphasis added). The plain and unambiguous language of the statute precludes a restitution challenge "because this statute affords relief only to prisoners claiming a right to be released from custody." *Bernard*, 351 F.3d at 361. Although the Eighth Circuit has not had the opportunity to determine explicitly whether ineffective assistance counsel claims based on restitution-related errors are cognizable under § 2255, it logically follows from the *Bernard* court's analysis that, if a restitution challenge is not cognizable under § 2255, an ineffective assistance of counsel claim based on a restitution challenge is likewise not cognizable. *See Kaminski v. United States*, 339 F.3d 84, 87 n. 1 (2d Cir. 2003), *cited in Bernard*, 351 F.3d at 361 ("[E]ven if [the petitioner] could show that his counsel was constitutionally defective in handling the restitution order, we believe that the district court was without subject matter jurisdiction to grant the petition on that basis. This conclusion follows from our holding . . . that § 2255 does not provide a jurisdictional basis for a challenge to a non-custodial order of restitution."); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997), *cited in Bernard*, 351 F.3d at 361 (petitioner claimed sentence was constitutionally defective because, *inter alia*, counsel failed to object to items included in restitution calculation; concluding §2255 is not available to challenge an order of restitution); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996) (petitioner claimed sentence was constitutionally defective because, *inter alia*, counsel erred in suggesting a restitution amount in excess of the maximum lawful amount; concluding petitioner could not challenge restitution obligation in a § 2255 proceeding); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) ("We hold that when a prisoner asserts an ineffective assistance of counsel claim under § 2255, he must satisfy *Strickland*'s prejudice requirement by showing harm that relates to his custody. That is, if counsel's constitutionally insufficient assistance affected the trial court's guilt determination or the sentencer's imposition of a prison term, a prisoner's

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

ineffective assistance of counsel claim falls within the scope of § 2255; if . . . it relates only to the imposition of a fine, his claim falls outside § 2255.").

Here, Petitioner's second ground for relief is an ineffective assistance of counsel claim based entirely on his counsel's alleged failure to object to certain items included in the restitution order.  He contends that counsel should have objected to the Court's determination that he pay a certain restitution sum.  Presumably, it is Petitioner's position that he would not have had to pay as much restitution had counsel objected.  Thus, the harm Petitioner asserts does not relate to his custody; instead, it relates to the amount of restitution he is required to pay.  Such a claim is not cognizable under § 2255 and therefore cannot provide a basis for relief.[7]

C.     <u>Ground Three: Ineffective Assistance for Advising Petitioner to Plead Guilty to Loss Amounts and Failing to Object to Loss Amounts</u>

In Ground Three, Petitioner makes a variety of arguments related to his guilty plea and sentencing, all of which he couches in terms of an ineffective assistance of counsel claim.  Petitioner's arguments in Ground Three relate to a provision in the Plea Agreement, in which the parties agreed that thirteen levels should be added pursuant to Section 2F1.1(b)(1)(N) of the Sentencing Guidelines because of losses and intended losses of more than $2.5 million but less than $5 million.  *See* Plea Agmt. at 5.  Although Petitioner's initial statement regarding Ground Three, which appears on page four of his Petition, indicates that it relates only to the alleged ineffective assistance provided by Mr. Wynne, his arguments are considerably broader and include allegations against Mr. Kavanaugh and Mr. Williams as well.  First, Petitioner claims that his plea was induced by a "threat" or that it was otherwise not knowingly and voluntarily made.  Next, he contends that Mr. Wynne was ineffective

---

[7]To the extent Petitioner may be attempting to argue that the failure to challenge the loss amounts resulted in increased prison time, that argument is addressed in Part C, below.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

because he advised him to plead guilty even though Petitioner "never agreed with or understood the reason he was pleading guilty to intended losses and other enhancement[s]" and "did not possess an understanding of the law in relation to the facts." Pet.'s Mem. in Supp. at 15, 16. Third, Petitioner argues that Mr. Wynne's advice that he plead guilty and Mr. Kavanaugh's and Mr. Williams's choice not to challenge the loss amounts were based on an erroneous view of the law because the Guidelines require that he be sentenced on the basis of actual, and not intended, losses. Finally, Petitioner contends that Mr. Kavanaugh and Mr. Williams rendered constitutionally ineffective assistance because they did not object to the loss amounts contained in the Presentence Investigation Report ("PSI Report") at the time of sentencing.

      1.     *Allegation that Plea was Induced by "Threat"*

At various points throughout his Petition, Petitioner indicates that his guilty plea was induced by a "threat." To the extent Petitioner is arguing that his plea was not knowingly and voluntarily made, his claim must fail. First, because the issue of a plea's validity must be raised on direct appeal, it is procedurally defaulted in this § 2255 collateral proceeding unless Petitioner can demonstrate cause and prejudice to excuse his procedural default. *Walker v. United States,* 115 F.3d 603, 605 (8th Cir. 1997). Even if the claim was not procedurally defaulted, it is nonetheless without merit. "A plea is not made intelligently where the defendant is not given notice of the true nature of the charge to which he is pleading." *United States v. Perez*, 270 F.3d 737, 740 (8th Cir. 2001). Here, Petitioner fails to allege any specific facts which, if true, might entitle him to relief. The only "threat" he identifies is that counsel indicated he could face many more years in prison if he chose not to accept the Plea Agreement. The "threat" of a longer prison term is not the type of threat which might render Petitioner's plea involuntary or unknowing. Rather than make specific factual allegations

which might entitle him to relief, Petitioner sets forth conclusory arguments that his guilty plea was coerced. This cannot provide a basis for relief.

In any event, a review of the record conclusively refutes Petitioner's claim that his guilty plea was made unknowingly or involuntarily. Petitioner indicated that he had the opportunity to read and discuss the Plea Agreement before signing it:

> Q: (By the Court) All right. Have you had an opportunity to read this document in its entirety before you signed it?
> A: I was recommended by my lawyer to sign it.
> Q: Okay. Well, that's not good enough. The question is, have you had an opportunity to read it.
> A: Okay. I've read it, sir.
> Q: All right. Have you had an opportunity to discuss it fully with your counsel before you signed it?
> A: Yes.

Ch. of Plea Tr. at 31. After initially expressing confusion regarding the $2.5 to $5 million loss amount stipulated in the Plea Agreement, Petitioner acknowledged that there existed no other agreements, understandings, or deals which he believed might affect his case in any way, and he indicated his desire to plead guilty in accordance with the terms of the Plea Agreement. *See* Ch. of Plea Tr. at 31-34. Petitioner acknowledged that no other promises, representations, or threats had been made in an effort to induce his guilty plea:

> Q: [By the Court:] Okay. Other than this agreement, has anyone at any time made any other or different promises, representations, or assurances to you or has anyone made any threats against you whatsoever in an effort or attempt to get you to enter a plea of guilty in this case?
> A: No, sir. They just told me if I don't plead guilty today, that I'm going to be facing a lot more time.

Ch. of Plea Tr. at 34. When he was challenged as to the veracity of his statement that he wished to change his plea to guilty, Petitioner adamantly confirmed his desire to change his plea:

> Q: [By the Court:] Okay. You know, I think this is – I think – I think what is

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> happening here, quite honestly, is that you don't want to plead guilty and you're –
>
> A:    I do want to plead guilty.
>
> Q:    giving me the impression that it's somebody else that's talking you into it, and I think I'm going to call this off and just go ahead with the trial.
>
> A:    Hey, Judge, I mean, I mean, I know you don't believe me. I'm a hundred percent want to plea guilty.
>
> . . . .
>
> Q:    But what we won't do is to have you here with somebody talking you into doing something you don't want to do or having you do something that you don't understand. Those things are unacceptable to me. . . . Do you understand?
>
> A:    Okay.
>
> Q:    All right. Do you believe you understand the terms of this plea agreement?
>
> A:    Yes, sir.

Ch. of Plea at 34-36. Petitioner further indicated his understanding that the Court could impose a sentence more severe than he anticipated or expected:

> Q:    . . . and I can reject the recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you anticipate or expect. Do you understand?
>
> A:    Can you – yes, sir, I do.

Ch. of Plea Tr. at 37. Petitioner confirmed that he had discussed possible application of the Sentencing Guidelines to his case and that he understood the sentence imposed could be different from what he may have expected:

> Q:    . . . Have you and Mr. Wynne talked about possible application of Sentencing Guidelines for your case?
>
> A:    Yes, sir.
>
> Q:    Do you understand that the sentence imposed may actually be different from any estimate that you may have expected or that your attorney may have given to you?
>
> A:    Yes, sir.

Ch. of Plea Tr. at 42. At the conclusion of the change of plea hearing, Petitioner was found to have entered an informed and voluntary plea:

> THE COURT: The Court finds that in the case of the United States of America versus

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> Mr. Tandy L. Hairston – case number is 4:04-CR-050-ERW – that the Defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the changes and of the consequences of his pleas, that the pleas of guilty are knowing and voluntary pleas made willingly and intelligently . . . .

Ch. of Plea Tr. at 44.

Thus, the record refutes any suggestion by Petitioner that his plea was not knowingly and voluntarily made. Petitioner's first argument with respect to Ground Three is procedurally defaulted, unsupported by specific factual allegations, and without merit. Therefore, it provides no basis for relief.

2.    *Allegation of Ineffective Assistance for Advice by Mr. Wynne to Accept Terms of Plea Agreement*

Petitioner makes various allegations as to Mr. Wynne's advice regarding the Plea Agreement and change of plea hearing. These allegations essentially amount to a claim that Mr. Wynne should have advised Petitioner not to accept a plea agreement which contained a stipulation that the loss amounts in this case ranged from $2.5 to $5 million. According to Petitioner, at the time of changing his plea to guilty, he did not understand why he should plead guilty to the $2.5 to $5 million loss range contained in the Plea Agreement when, in his view, his sentence should be based on a much lower dollar value of actual losses. Petitioner states that he expected Mr. Wynne to challenge the loss amounts at sentencing and that he never "intended to stipulate to losses or intended losses and advised [Mr. Wynne] of this point before the Plea Agreement was signed." Mov.'s Trav. at 12. The record in this case refutes Petitioner's claim that Mr. Wynne's performance fell below the wide range of professional assistance acceptable under *Strickland*.

As an initial matter, the Court notes that Petitioner had a real incentive to enter into the Plea Agreement. As the Government points out, Petitioner was the focus of a long-term investigation

13

conducted by the Federal Bureau of Investigation, the Internal Revenue Service, and the Postal Inspection Service. The large amount of evidence against Petitioner included a court-authorized interception of cellular phone calls and the twenty or more business lines at Petitioner's place of business, resulting in the interception of thousands of phone calls, many of which feature conversations involving Petitioner in which fraudulent real estate deals and financing were discussed. Moreover, there was evidence in the form of tape-recorded meetings at which Petitioner attempted to induce cooperating subjects into fraudulent transactions. Numerous co-defendants had agreed to cooperate against Petitioner and would have testified that he was the leader of the fraudulent scheme. The Government was prepared to demonstrate that, "[f]rom 1998 to 2001, [The Loan Store] made approximately $21,000,000 in loans containing some form of fraud." Plea Agmt. at 11. It appears that Mr. Wynne was able to negotiate a favorable plea agreement on Petitioner's behalf.

The record clearly refutes any suggestion by Petitioner that he was unaware of the terms of the Plea Agreement or that he did not know he was accepting all of the terms of the Plea Agreement when he decided to sign it and enter a plea of guilty. Petitioner states that he "intended to plead guilty, but only to the charges in the Plea agreement not to the intended loss amounts and enhancement." Mov.'s Trav. at 10. He also states that he "disagreed with loss amounts and informed Mr. Wynne of this fact before he signed [the] Plea Agreement." *Id.* These statements, along with the extensive discussion which took place on the record during the change of plea hearing, reveal that Petitioner did understand that the Plea Agreement included a stipulation as to the amount of loss. Petitioner may not have agreed with this stipulated fact, or he may have wished that the stipulated amount would have been something less than $2.5 to $5 million. However, it appears that the Government was unwilling to stipulate to a lesser amount. Thus, Petitioner was faced with the choice of either accepting the terms

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

which had been negotiated, or maintaining a plea of not guilty and proceeding to trial. Petitioner

repeatedly expressed his desire to plead guilty and he chose to accept the terms of the Plea Agreement.

Petitioner received valuable consideration in return for agreeing to certain stipulations in the Plea

Agreement, including that several charges against him were dismissed and that he received a shorter

prison term than what he would have received had he been found guilty on all counts. When

Petitioner "intended to plead guilty," as he states, he necessarily intended to accept all terms of the

Plea Agreement. This is a fundamental principle of contract law and one of which Petitioner, as a

sophisticated business person, was surely aware. The record reveals that Petitioner was aware of the

$2.5 to $5 million loss amount stipulation and that he voluntarily and knowingly chose to agree with

that stipulated amount when he signed the Plea Agreement. Counsel was not ineffective for advising

Petitioner to accept the terms of the Plea Agreement at issue here, and Petitioner's claim fails under

the first *Strickland* prong.[8]        Finally, Petitioner's suggestion that Mr. Wynne was ineffective for

---

[8]Moreover, at the change of plea hearing, Petitioner indicated that he was entirely satisfied
with Mr. Wynne's services, save for wishing that he had received his copy of the Plea Agreement
at an earlier time:

> Q:      Has Mr. Wynne conducted himself in a manner that causes you to have
>         any complaint against him as your counsel either because of something he
>         did, something he failed to do, or for any other reason?
> A:      No, sir. I just wanted to review that document a little earlier.
> . . . .
> Q:      Okay. All right. Have you been entirely satisfied with the services performed
> on your behalf by Mr. Wynne as your counsel in this case up to        this time?
> A:      Except that I wanted to go over this earlier.
> Q:      All right. Earlier today, correct?
> A:      I wanted to go over the plea agreement, but I just got it Friday, and I'm
>         pleading Monday.
> Q:      [by the Court:] Right.
> A:      [by Petitioner:] Other than that.

Ch. of Plea Tr. at 21-22.

advising him that the loss amounts could be challenged at the time of sentencing is without merit. Mr. Wynne cannot be faulted for any failure to challenge the loss amounts at the time of sentencing. Well before the time of Petitioner's sentencing, Mr. Wynne was granted leave to withdraw as Petitioner's attorney due to certain conduct exhibited by Petitioner himself. Thus, this argument fails to provide any support for Petitioner's claim that Mr. Wynne's assistance fell below the applicable standard.[9]

3.    *Allegation of Ineffective Assistance Due to Erroneous View of Applicable Law*

Petitioner alleges that Mr. Wynne was ineffective because his advice to plead guilty was based on an improper understanding of the law applicable in Petitioner's case. He also indicates that Mr. Kavanaugh and Mr. Williams rendered ineffective assistance based on the same improper understanding. Petitioner's claim that Mr. Wynne, Mr. Kavanaugh, and Mr. Williams were deficient for providing him with advice that was contrary to established law fails under the first *Strickland* prong. Petitioner alleges that counsels' advice was based on an erroneous view that he would be sentenced on the basis of intended, rather than actual, loss. According to Petitioner, the law is that, in fraudulent loan cases, the loss is the actual loss to the victim. A review of applicable law reveals that Petitioner's view is incorrect. Under the Guidelines, in fraudulent loan application and contract procurement cases, "the loss is the actual loss to the victim . . . . However, where the intended loss is greater than the actual loss, the intended loss is to be used." U.S.S.G. § 2F1.1, Application Note 8(b)

---

[9]Petitioner contends that he pled guilty only because he knew that the loss amounts could be challenged at the time of sentencing. Thus, by Petitioner's own admission, he chose, at the time of his change of plea, to agree to a particular term of the Plea Agreement with the hope that he could challenge it later. Of course, even at that time, Petitioner would have known that there was no guarantee that any such challenge would be successful and that he could not back out of the Agreement in the event his challenge was unsuccessful. Undoubtedly realizing his precarious position, it appears that Petitioner decided that it was best to agree to the Plea Agreement's terms notwithstanding the risk that any subsequent challenge to the loss amounts could be unsuccessful.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(2000).  Intended loss means "the loss the defendant intended to cause to the victim."  *United States v. Wells*, 127 F.3d 739, 746 (8th Cir. 1997).  "[T]he method used by a sentencing court to determine 'loss' depends, in the first instance, on the court's factual finding of the intent of the defendant to cause loss and on the court's factual finding of the extent of actual loss."  *Id.* at 747.  Therefore, the loss for sentencing purposes is the greater of the intended loss or the actual loss.  *Id.*  Thus, Petitioner's contention that the Guidelines required that he be sentenced on the basis of actual loss is without merit.  In reality, the Guidelines required that he be sentenced on the basis of either actual loss or intended loss, depending on which figure was greater.  Petitioner has failed to allege any facts to support his claim that counsel provided advice contrary to applicable law.  Thus, Petitioner has failed to demonstrate that counsels' performance fell below an objective standard of reasonableness, and his claim fails under the first *Strickland* prong.

      4.    *Failure to Object to Loss Amounts*

Petitioner's final argument with respect to Ground Three is that counsels' assistance at sentencing was deficient because Mr. Kavanaugh failed to object to the $2.5 to $5 million intended loss amount that formed the basis of his sentence enhancement under § 2F1.1.  Petitioner alleges that he was prejudiced by this omission because: (1) had he known the loss amounts would not be challenged by counsel, "there is a reasonable probability that [he] would have not plead guilty and elected to proceed to trial," Mov.'s Trav. at 12; and (2) he received a higher sentencing enhancement than he would have had an appropriate challenge been made.  Petitioner states that he requested that Mr. Kavanaugh and Mr. Williams challenge the loss amounts at sentencing and that he provided them

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

with a file of "mitigating evidence to prove his innocents of losses." Mov.'s Trav. at 15.[10] Petitioner also alleges that, after Mr. Kavanaugh requested that he review the Indictment, Plea Agreement, and PSI Report, he "mailed Kavanaugh a letter regarding loss amount contained in PSI report." Mov.'s Trav. at 14. Petitioner further states that Mr. Williams said he would argue the intended loss issue at sentencing, but that Mr. Kavanaugh (who appeared with Petitioner at sentencing) did not do so. *Id.* at 16. According to Petitioner, he "never admitted to the amount of losses," instead "reserv[ing] the losses and intended losses to be argued until sentencing." Mov.'s Trav. at 20. Mr. Kavanaugh and Mr. Williams respond by arguing that the decision not to challenge the loss amounts was sound strategy which was in Petitioner's best interest because it limited his sentencing exposure.[11]

"In assessing counsel's performance, courts defer to reasonable trial strategies and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (internal quotations omitted). *See also Williams v. United States*, 343 F.3d 927 (8th Cir. 2003) (reasonable strategy to advise defendant to maintain guilty plea because doing so benefitted defendant by limiting his sentencing range). Mr. Kavanaugh and Mr. Williams maintain that it was in Petitioner's best interest not to challenge the loss amounts. Petitioner, however, contends that he "could only have benefit[t]ed had

---

[10]According to Petitioner, the intended loss amount contained in the Plea Agreement and Presentence Investigation Report was incorrect because it failed to off-set the potential loss amount with available collateral.

[11]In his Amended § 2255 Memorandum, Petitioner appears to argue that the Court incorrectly enhanced Petitioner's sentence, thereby committing reversible error. The Court will only consider this argument as it relates to the ineffective assistance of counsel claim. Because Petitioner did not raise any claim regarding the Court's alleged error on direct appeal, the claim is procedurally defaulted and Petitioner has made no showing which might overcome the default. Further, the right to make such a claim was waived when Petitioner signed the Plea Agreement.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

counsel challenged loss amounts contained in [the] PSI Report." Mov.'s Supp. Trav. at 7. Based on the Petition, the files, and the record of this case, the Court is unable to conclusively determine whether the decision not to challenge loss amounts was reasonable strategy falling within the wide range of reasonable professional assistance, as contended by Mr. Kavanaugh and Mr. Williams, or whether the failure to object to the loss amounts constitutes ineffective assistance, as Petitioner argues. Specifically, the Court is unable to conclusively determine whether the decision not to challenge the loss amounts was made notwithstanding Petitioner's insistence that the loss amounts be challenged. Though the record currently before the Court does tend to refute Petitioner's contention that he insisted the loss amounts be challenged at the time of sentencing and that he provided counsel with the factual support necessary to make such challenges,[12] the record is not conclusive. Because

---

[12]At the time of sentencing, Petitioner did not indicate that he had any objections to the loss amounts. At sentencing, all objections to the PSI were withdrawn, with Petitioner's permission:

| | |
|---|---|
| The Court: | All right. Mr. Kavanaugh, have you, sir, and has Mr. Hairston received and reviewed a copy of the report? |
| Mr. Kavanaugh: | Your Honor, we've received a copy. We've gone over it. We've discussed it. |
| The Court: | All right. And I noted that there were objections. I thought some were resolved. I wasn't sure if all had been resolved. |
| Mr. Kavanaugh: | Your Honor, we did file objections regarding a two-level enhancement for mass marketing. As the Court knows, we were not the original attorney of record. We looked into the matter, we investigated it, and at this time, I would ask leave of court to withdraw those objections. |
| The Court: | All right. |
| Mr. Kavanaugh: | I've consulted with Mr. Hairston. I've explained to him why they do not apply in this case . . . . |
| The Court: | Very well. They are withdrawn. Is that with your permission, Mr. Hairston? |
| The Defendant: | Yes, sir. |

Sent. Tr. at 2-3. The Court then adopted the factual statements contained in the PSI

Petitioner has made factual allegations that his counsel failed to challenge the loss amounts in direct contravention of his wishes and that a challenge to the loss amounts would have resulted in a lower sentence, the Court concludes that the better course is to receive evidence on this issue. *See Machibroda v. United States*, 368 U.S. 487, 494 (1962) (district court should not make findings on controverted issues of fact without a hearing). Therefore, the Court will hold an evidentiary hearing for the limited purpose of receiving testimony as to whether the decision not to challenge loss amounts at the time of sentencing constituted ineffective assistance of counsel, as alleged by Petitioner.

      D.    <u>Ground Four: Ineffective Assistance for Failing to Raise Alleged *Blakely* Issues</u>

Petitioner alleges that Mr. Kavanaugh and Mr. Williams were ineffective for failing to advise him and raise issues regarding *Blakely v. Washington*. This argument fails on the first *Strickland* prong because counsel's performance was within the bounds of professional conduct. When a defendant has made admissions pursuant to a stipulation of facts, such as the one in this case, *Blakely* is inapplicable. *United States v. Booker*, 125 S.Ct. 738, 756 (2005) (any fact other than a prior conviction which is necessary to support sentence exceeding maximum authorized by facts established by a plea of guilty or a jury verdict must be admitted by defendant or proved to a jury). *See also United States v. Haidley*, 400 F.3d 642, 644 (8th Cir. 2005) (no Sixth Amendment issue because defendant stipulated to the loss amount). Thus, counsel were not ineffective for failing to advise Petitioner of a *Blakely* issue or for failing to make a *Blakely* argument at the time of sentencing.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Tandy Hairston is not entitled to relief under 28

---

Report, specifically including the fact that the loss was between $2.5 and $5 million. When asked whether there was any reason not to pronounce judgment upon him, Petitioner stated, "No, sir." Sent. Tr. at 4.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

U.S.C. § 2255 for any of the reasons raised in Grounds One, Two, or Four of his Petition. Further, as explained herein, Petitioner is not entitled to relief on the basis of the following arguments raised in Ground Three: (1) his plea was induced by a threat or otherwise not voluntarily made; (2) Mr. Wynne was ineffective in advising him to plead guilty; and (3) counsel were ineffective for advising him based on an erroneous view of the law. At this time, the Court reserves its ruling as to the final argument presented in Ground Three regarding Mr. Kavanaugh's and Mr. Williams's alleged ineffectiveness for failing to challenge the loss amounts at the time of sentencing.

**IT IS FURTHER ORDERED** that, pursuant to its jurisdiction in 4:04CR00050 ERW, the Court will amend its judgment with respect to Defendant Tandy Hairston in accordance with U.S.S.G. § 5G1.2(d). The Amended Judgment shall follow this Order.

**IT IS FURTHER ORDERED** that Petitioner Tandy Hairston's Petition for Evidentiary Hearing [doc. #24] is **GRANTED**, in part. An evidentiary hearing for the purpose of receiving testimony as to the decision not to challenge loss amounts at the time of sentencing will be held on **March 31, 2006 at 9:00 a.m.** This evidentiary hearing shall be limited to this particular issue, as explained herein.

**IT IS FURTHER ORDERED** that Stephen R. Welby, Welby and Ridings, LLC, 1221 Locust, Suite 1000, St. Louis, Missouri 63103, phone 314-621-1800, fax 314-621-4222, is appointed to represent Petitioner in this matter. The clerk of the Court shall provide Petitioner's newly-appointed counsel with copies of any requested documents in the court file at no cost.

Dated this <u>6th</u> day of February, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

21

PDF created with FinePrint pdfFactory trial version www.pdffactory.com